IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | |
| ) | CASE NO. 2016-CR- 29 |
| ) | |
| TOMAS MIGUEL LIRIANO CASTILLO, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

# THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION AND AMENDED MOTION TO VACATE

The United States of America, by and through Gretchen C.F. Shappert, United States Attorney for the District of the Virgin Islands, and Sigrid M. Tejo-Sprotte, Assistant United States Attorney, respectfully files this opposition to the Defendant's Motion and Amended Motion to Vacate [ECF 86 and 86]. The defendant's motions are without merit and should be denied as the designation of the Acting Attorney General was valid and any alleged invalidity of the Acting Attorney General's designation does not invalidate the sentence imposed in this matter.

## BACKGROUND

On August 11, 2016, a grand jury for the District of the Virgin Islands, Division of St. Thomas and St. John, indicted Tomas Miguel Liriano Castillo for conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2); use of a communication facility to facilitate a felony drug offense, in violation of 21 U.S.C. § 843(b) (Count 3); and illegal entry, in violation of 8 U.S.C. § 1325(a) (Count 4).

On October 4, 2016, a jury found Castillo guilty on Counts 1, 2 and 4. The District Court sentenced Castillo on February 21, 2017, to 121 months' imprisonment on Counts 1, 2 and 4, five

years of supervised release and a $210 assessment. Castillo filed a notice of appeal on February 24, 2017.

The Third Circuit Court of Appeals on July 18, 2018 issued a mandate remanding the case back for resentencing. On November 8, 2018, the Court resentenced the defendant.

## ARGUMENT

On November 7, 2018, Attorney General Jefferson B. Sessions resigned from office and, on the same date, the President directed Matthew G. Whitaker, who previously served as Chief of Staff to Attorney General Sessions, to serve temporarily as Acting Attorney General under the Federal Vacancies Reform Act (FVRA), 5 U.S.C. §§ 3345 *et seq.* *See Designating an Acting Attorney General*, 42 Op. O.L.C. __, at 1 (Nov. 14, 2018) (OLC Memorandum), slip-opinion version available at https://www.justice.gov/olc/file/1112251/download. The defendant subsequently moved to dismiss the indictment in this case, arguing that the Acting Attorney General's appointment was invalid under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2. The President's designation of the Acting Attorney General was valid. But even if it were invalid, the legal authority of the Department of Justice to prosecute this case does not depend in any way on whether a vacancy in the office of Attorney General has been properly filled. The United States Attorney and her Assistants are conducting the prosecution pursuant to statutory authority, and the United States Attorney is supervised by the Senate-confirmed Deputy Attorney General. For this reason, the alleged invalidity of the Acting Attorney General's designation does not invalidate the indictment.

## I. The Acting Attorney General's Designation Was Valid.

The President's temporary designation of Mr. Whitaker as the Acting Attorney General was valid as both a statutory and constitutional matter.

a. Under the FVRA when a presidentially appointed, Senate-confirmed officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," the "first assistant" to that office by default "shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1). But the FVRA also authorizes the President to override that default rule. As relevant here, "the President (and only the President) may direct an officer or employee" of the agency in which the vacancy occurs "to perform the functions and duties of the vacant office temporarily in an acting capacity," as long as the officer or employee served in the agency for at least 90 of the 365 days preceding the vacancy and is paid at least at the GS-15 level. 5 U.S.C. § 3345(a)(3). An individual whom the President designates under that provision may serve in an acting capacity subject to the time limitations of 5 U.S.C. § 3346.

The President invoked 5 U.S.C. § 3345(a)(3) to designate Mr. Whitaker as the Acting Attorney General following former Attorney General Sessions' resignation from office. *See* OLC Memorandum 1. At the time, Mr. Whitaker had been serving in the Department as Chief of Staff and Senior Counselor to the Attorney General, and he met the statutory requirements of having served in the Department of Justice for at least 90 days prior to the vacancy at a rate of pay of GS-15 or higher. *See id.* at 5. Defendant does not contend otherwise. Accordingly, Mr. Whitaker's appointment as Acting Attorney General satisfied the plain terms of Section 3345(a)(3).

A separate statute, 28 U.S.C. § 508, establishes a line of succession for the Attorney General, but it is not the exclusive means for addressing such a vacancy, for reasons the

Department's Office of Legal Counsel has explained at length. *See* OLC Memorandum 5-8; *see also Authority of the President to Name an Acting Attorney General*, 31 Op. O.L.C. 208, 209-210 (2007). Section 508(a) states that "[i]n case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office." Section 508(a) also specifies that "for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General." On its face, the statute does not purport to be the exclusive means of addressing a vacancy in the office of the Attorney General, and indeed the reference to the first section of the FVRA ("section 3345 of title 5") in Section 508(a) itself confirms the opposite.

Nor does the FVRA itself make 28 U.S.C. § 508 exclusive. The relevant provision, entitled "Exclusivity," states that "Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any [presidentially appointed, Senate-confirmed] office of an Executive agency," unless another statute "expressly . . . designate[s] an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1)(B). Section 508(a) is a statute that "designate[s] an officer or employee to perform the functions and duties of a specified office" within the meaning of that provision. *See* 31 Op. O.L.C. at 208. But by the plain terms of the FVRA, the existence of such an agency-specific succession statute means only that the FVRA is not "*exclusive*," not that the FVRA is therefore rendered unavailable or inapplicable. 5 U.S.C. § 3347(a) (emphasis added). When an agency-specific statute, such as Section 508(a), provides a default rule for succession in office, 5 U.S.C. § 3347 ensures that the President may either allow that default rule to operate or may invoke the FVRA to designate an alternate acting officer. A

contrary reading would invert the meaning of the FVRA's exclusivity provision, transforming it from a rule about when the FVRA is exclusive of other statutes into one about when other statutes are exclusive of the FVRA.

The structure of the FVRA confirms that 5 U.S.C. § 3347 does not render the FVRA inapplicable in the face of an agency-specific vacancy statute, including 28 U.S.C. § 508. Congress addressed the inapplicability of the FVRA elsewhere in the statute. Section 3345 applies in general to vacancies in an "Executive agency." 5 U.S.C. § 3345(a); *see also* 5 U.S.C. § 105 (defining "Executive agency" to include any "Executive department," such as the Department of Justice). In a separate provision, entitled "Exclusion of certain officers," Congress qualified the scope of the statute by providing that "Section[] 3345 . . . shall not apply" to certain specified officers in certain specified agencies. 5 U.S.C. § 3349c. The Attorney General is not among the officers excluded from coverage under the FVRA by Section 3349c. *See ibid.*

By contrast, the vacancy statute that preceded the FVRA contained a provision authorizing the President to designate a presidentially appointed, Senate-confirmed officer to perform the duties of a vacant office in some circumstances, but that provision expressly did "not apply to a vacancy in the office of Attorney General." 5 U.S.C. § 3347 (1994). Indeed, similar provisions can be traced to the 1870s. *See*, *e.g.*, Rev. Stat. § 179 (1st ed. 1875), 18 Stat. 1, 27. But in the FVRA, Congress omitted -- and therefore eliminated -- the prior limitation. *See* OLC Memorandum 7; *see also*, *e.g.*, Murphy v. Smith, 138 S. Ct. 784, 789 (2018) (giving effect to Congress's purposeful omission of prior statutory language); Brewster v. Gage, 280 U.S. 327, 337 (1930) (noting that "[t]he deliberate selection of language so differing from that used in earlier acts indicates that a change of law was intended").

In light of the FVRA's text and structure, it is unsurprising that the only court of appeals to address the question has concluded that office-specific vacancy statutes do not displace the President's FVRA authority. In *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016), the court of appeals rejected the argument that the FVRA was inapplicable where an agency-specific statute "expressly provide[d] a means for filling" the vacancy in question. *Id.* at 556 (discussing 29 U.S.C. § 153(d)). The court concluded that "the text of the respective statutes" "belied" any such argument. *Id.* at 555. The existence of an agency-specific statute, the court explained, means only that "neither the FVRA nor the [agency-specific statute] is the *exclusive* means of appointing" an acting officer, and "the President is permitted to elect between these two statutory alternatives." *Id.* at 556; *see also English v. Trump*, 279 F. Supp. 3d 307, 323-24 (D.D.C. 2018) (reaching a similar conclusion with respect to the office of the Director of the Bureau of Consumer Financial Protection).

That conclusion is confirmed by the legislative history of the FVRA. A Senate Committee Report accompanying a bill that was the basis for the FVRA contained a list of then-existing, agency-specific statutes "that expressly authorize the President . . . to designate an officer to perform the functions and duties of a specified office temporarily in an acting capacity, as well as statutes that expressly provide for the temporary performance of the functions and duties of an office by a particular officer or employee." S. Rep. No. 250, 105th Cong., 2d Sess. 15 (1998). The Report stated that the bill would "retain[]" those statutes, *ibid.*, but that in those instances the "Vacancies Act would continue to provide an *alternative* procedure for temporarily occupying the office," *id.* at 17 (emphasis added). This passage describing the two types of agency-specific statutes that the bill would retain -- those that expressly authorize the President to designate an

officer to perform the functions and duties of the vacant office, and those (like 28 U.S.C. § 508) that expressly provide for the performance of those duties by a particular officer, *see* S. Rep. No. 250, at 15 -- directly corresponds to a provision in the Senate bill containing the language enacted as Subparagraphs (A) and (B) of 5 § U.S.C. 3347(a)(1). *See* S. Rep. No. 250, at 26 (proposed 5 U.S.C. § 3347(a)(2)(A) and (B)).

The drafting history further confirms that the FVRA remains available as an alternative means of addressing a vacancy in the office of the Attorney General. A provision in the bill as reported in the Senate would have provided that "[w]ith respect to the office of the Attorney General . . . the provisions of section 508 shall be applicable," S. Rep. No. 250, at 25, which was intended to limit the President's authority to designate a person to perform the duties of Attorney General via the FVRA, *see id.* at 13. But Congress omitted that limitation from the final version of the Act. The deletion of that limitation means that the office of Attorney General is within the category of offices for which the FVRA is an alternative to the agency-specific statute. And indeed, 28 U.S.C. § 508 was included in the list of then-existing agency-specific statutes in the Senate Report. *See id.* at 16. "Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987) (citation omitted); *cf.* p. 16, *supra*.

b. Mr. Whitaker's designation to serve temporarily as Acting Attorney General conformed to the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2. That Clause requires the President to appoint principal officers, "by and with the Advice and Consent of the Senate," but permits Congress to vest the appointment of "inferior Officers . . . in the President alone, in the

Courts of Law, or in the Heads of Departments." *Ibid.*; *see Lucia v. SEC*, 138 S. Ct. 2044, 2051 & n.3 (2018); *Edmond v. United States*, 520 U.S. 651, 660 (1997).

Although the Attorney General is surely a principal officer, the Appointments Clause does not require that an individual who merely acts temporarily as Attorney General must also be appointed in the manner of a principal officer. To the contrary, both long-standing precedent of the Supreme Court and historical practice demonstrate that "the temporary nature of acting service weighs against principal-officer status." OLC Memorandum 10. In *United States v. Eaton*, 169 U.S. 331 (1898), the Court held that a "subordinate officer" (there, a vice-consul) may be "charged with the performance of the duty of" a principal officer "for a limited time, and under special and temporary conditions," without "thereby transform[ing] into" a principal officer, *id.* at 343. The Court therefore rejected an Appointments Clause challenge to a scheme in which the vice-consul, who was not appointed as a principal officer, temporarily functioned as an acting principal officer (consul-general) during a vacancy. *See id.* at 331-332, 339-340, 343-344.

Nor is *Eaton* exceptional. As the Court noted, the "practice of the government" for decades before that case confirmed the shared understanding of both the Legislative and Executive Branches that a non-Senate-confirmed officer may serve temporarily as an acting principal officer without violating the Appointments Clause. 169 U.S. at 344 (citation omitted); *see* OLC Memorandum at 10-18 (collecting historical evidence dating to 1792 and spanning more than 160 individual instances, including examples of non-Senate-confirmed officers serving as Acting Secretary of State, Acting Secretary of the Treasury, Acting Secretary of War, and Acting Attorney General); *cf. NLRB v. Noel Canning*, 134 S. Ct. 2550, 2559 (2014) (noting that "historical practice" is entitled to "significant weight" in addressing the separation of powers) (emphasis omitted).

Given the "limited" and "temporary" nature of his duties, *Eaton*, 169 U.S. at 343, an Acting Attorney General is not a principal officer for purposes of the Appointments Clause. Congress has permissibly vested the authority to select non-Senate-confirmed officials to be Acting Attorney General (or many other acting officers) in the President alone. By doing that in the FVRA, it has simply restored a power that it had repeatedly granted to the President in multiple statutes between 1792 and 1868. *See* OLC Memorandum 11-12.

*Eaton*'s holding is not limited to periods of exigency. In *Eaton* itself, the Supreme Court stated that Congress's "manifest purpose" in distinguishing between consuls and vice-consuls was to "limit the period of duty to be performed by the vice-consuls, and thereby to deprive them of the character of 'consuls,' in the broader and more permanent sense of that word." 169 U.S. at 343. Thus, the "special and temporary conditions" recognized in *Eaton* were not the particular exigency associated with the facts of that case, but the limits of the then-existent regulatory scheme, which permitted service in any case of "the absence or the temporary inability of the consul," whatever the cause. *Id.* at 342; *see also id.* at 341.

Moreover, the Court has consistently described *Eaton* as turning on the temporary nature of the service, not on any particular exigency. In *Edmond*, for example, the Court explained *Eaton* as finding that "a vice consul charged temporarily with the duties of the consul" is an inferior officer, 520 U.S. at 661, with no mention of any emergency circumstances. Likewise, in *Morrison v. Olson*, 487 U.S. 654 (1988), the Court described *Eaton* as approving of the practice of appointing acting vice-consuls "during the temporary absence of the consul," *id.* at 672, again without reference to any emergency other than the vacancy itself. *See also id.* at 721 (Scalia, J., dissenting) (noting that *Eaton* "held that the appointment . . . of a 'vice-consul,' charged with the duty of

temporarily performing the function of the consul, did not violate the Appointments Clause"); *cf. Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 537 F.3d 667, 708 n.17 (D.C. Cir. 2008) (Kavanaugh, J., dissenting) (citing *Eaton* for the proposition that "[t]he temporary nature of the office is the . . . reason that *acting* heads of departments are permitted to exercise authority without Senate confirmation"), *aff'd in part and rev'd in part*, 561 U.S. 447 (2010).

Nor is *Eaton* distinguishable because it concerned "consular officers" abroad. The decision was not reasoned on those terms. Instead, the Court explained that a contrary decision would "render void *any and every* delegation of power to an inferior to perform *under any circumstances or exigency*." *Eaton*, 169 U.S. at 343 (emphases added). Indeed, the Appointments Clause applies equally to "public Ministers and Consuls . . . and all other Officers of the United States." U.S. Const. art. II, § 2, cl. 2. There is not one constitutional rule for consuls and vice-consuls and another for domestic officers, but rather a single Appointments Clause that has long been understood to permit the President to make a temporary acting designation like the one at issue here.

## II. Even If the Acting Attorney General's Designation Were Invalid, That Would Not Justify Dismissal of the Indictment.

The defendant argues that the Acting Attorney General lacks constitutional authority to represent the United States and that his lack of authority flows to every subordinate officer in the Department of Justice, meaning that the indictment must be dismissed. This argument misunderstands the constitutional and statutory framework.

The Appointments Clause requires the President, "with the Advice and Consent of the Senate," to "appoint" all "Officers of the United States . . . which shall be established by Law." U.S. Const. art. II, § 2, cl. 2. This method is the default means of appointing all officers and the

exclusive means of appointing *principal* officers.  *See Lucia*, 138 S. Ct. at 2051 n.3.  The Clause goes on to say, however, that Congress may vest the appointment of "inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.

Congress established the Attorney General as "the head of the Department of Justice."  28 U.S.C. § 503.  But Congress has also established the office of United States Attorney, directing the President to "appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."  28 U.S.C. § 541(a).  The United States Attorney has the statutory authority and responsibility to "prosecute for all offenses against the United States" occurring "within his district."  28 U.S.C. § 547(1).  Congress has also established the office of Deputy Attorney General, 28 U.S.C. § 504, and has authorized the Attorney General to delegate any of his functions to "any other officer, employee, or agency of the Department of Justice," 28 U.S.C. § 510.

### A.  The prosecution is supervised by a validly appointed United States Attorney.

Although almost all of the functions of the Department of Justice and its officers are vested in the Attorney General, 28 U.S.C. § 509, the Attorney General need not and in most cases does not exercise those functions himself.  Nor does the authority of a United States Attorney to conduct litigation on behalf of the Department depend on any action by the Attorney General.  By statute, Congress has expressly authorized each United States Attorney to, among other things, "prosecute for all offenses against the United States."  28 U.S.C. § 547(1).  Thus, where a U.S. Attorney's office is conducting a criminal prosecution under the direction and supervision of the U.S. Attorney, federal law expressly authorizes the conduct in that litigation without the need for any

separate authorization from the Attorney General.  This means that the United States Attorney's authority to conduct this prosecution does not depend on whether the Acting Attorney General has been validly assigned to his position by the President.

The United States Attorney who authorized and now supervises this prosecution was appointed by the district court in accordance with 28 U.S.C. § 546(d).  The Appointments Clause specifically authorizes Congress to vest the appointment of inferior officers "in the Courts of Law," and Congress did so in Section 546(d).  Thus, this prosecution is supervised by an officer who was appointed in compliance with the Appointments Clause.  *See United States v. Hilario*, 218 F.3d 19, 24-29 (1st Cir. 2000) (upholding Section 546(d) against Appointments Clause and separation-of-powers challenges).  Because the United States Attorney has statutory authorization to prosecute federal offenses, *see* 28 U.S.C. § 547(1), there is no basis to dismiss the indictment or otherwise delay prosecution of this case.

> **B.     The United States Attorney is supervised by the Senate-confirmed Deputy Attorney General, whom the defendant contends should be the Acting Attorney General.**

Additionally, under the Department of Justice's organizational structure, the officer with direct supervision over the United States Attorneys is the Senate-confirmed Deputy Attorney General.  *See* 28 C.F.R. § 0.15(a) ("The Deputy Attorney General is authorized to exercise all the power and authority of the Attorney General, unless any such power or authority is required by law to be exercised by the Attorney General personally."); Department of Justice, Organization, Mission & Functions Manual, https://www.justice.gov/ jmd/organization-mission-and-functions-manual-attorney-general ("U.S. Attorneys report directly to the Deputy . . . ."); Department of Justice Organizational Chart,

https://www.justice.gov/agencies/chart.  The Deputy Attorney General is the very person who the defendant claims ought to have been named the Acting Attorney General.  The defendant is in essence arguing that the person who already has indirect supervision over this prosecution (the Deputy Attorney General) ought to be in a different position (the Acting Attorney General) where he would even more indirectly supervise the prosecution.

> **C.    The defendant has provided no basis for concluding that the Acting Attorney General has had any personal involvement in this prosecution.**

Although an Attorney General may involve himself in particular cases handled by the Department, *see* 28 U.S.C. § 516, he is under no obligation to do so.  And given the thousands of cases handled by the Department's litigating divisions and the offices of 93 U.S. Attorneys each year, it is not feasible for an Attorney General to participate personally in more than a small fraction of the Department's cases.  This is especially true in criminal cases.  The United States Sentencing Commission received reports of approximately 67,000 federal criminal cases in which the offender was sentenced in fiscal year 2017.  *See* https://www.ussc.gov/research/data-reports/overview-federal-criminal-cases-fiscal-year-2017.

In order to establish any prejudice from the alleged defects in the Acting Attorney General's designation, the defendant would have to show that the Acting Attorney General has personally participated in this matter or otherwise personally affected its course and that the adverse actions were undertaken on his initiative or direction. The defendant has not done so.  And mere speculation that the Acting Attorney General had taken some action affecting this case is insufficient to warrant any relief, much less the drastic relief of dismissing the indictment.

### D. The Acting Attorney General's indirect supervision over the case as the head of the Department of Justice does not support dismissal.

The Acting Attorney General's indirect involvement with this case as the acting head of the Department of Justice does not affect the validity of this prosecution. The defendant cannot support the sweeping claim that *every* officer within the Department of Justice would lack authority to prosecute criminal cases were the Acting Attorney General's designation invalid. Although the Attorney General is the "head of the Department of Justice," 28 U.S.C. § 503, the United States Attorneys and other Department officers are validly appointed officers of the United States in their own right and have statutory authority that is not contingent on the validity of the Attorney General's (or Acting Attorney General's) appointment. *See United States v. Hartwell*, 73 U.S. 385, 393 (1867) (once an officer is "appointed pursuant to law, . . . [v]acating the office of his superior would not have affected the tenure of his place"). *Cf. Tenure of Office of Inspectors of Customs*, 2 Op. Atty. Gen. 410, 412 (1831) (office holders continue to hold office despite a vacancy or change in the person who exercised appointing authority). The 115,000-member Department of Justice is not a house of cards that falls whenever it is not headed by a Senate-confirmed officer.

The defendant's request to dismiss the indictment based on putative defects in the appointment of the Acting Attorney General also overlooks the independent role of the grand jury in this matter. The indictment was returned by the grand jury, which "is a constitutional fixture in its own right," *United States v. Williams*, 504 U.S. 36, 47 (1992) (citation omitted), and "act[s] independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960). "An indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).

And any failures by the Executive Branch, including prosecutorial misconduct in front of the grand jury, provide a court "no authority to dismiss the indictment . . . absent a finding that [the defendant] w[as] prejudiced by such misconduct."  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

The Acting Attorney General's allegedly invalid designation does not affect the indictment's validity.  As an initial matter, the indictment was returned before the Acting Attorney General's appointment. Moreover, the defendant cannot show any error or prejudice where the prosecutor before the grand jury was supervised by a validly appointed United States Attorney, as well as the same Deputy Attorney General who the defendant asserts should be the Acting Attorney General.  *See United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994) (participation of statutorily unauthorized Special Assistant U.S. Attorney in grand jury proceedings was harmless error where he was supervised by authorized Assistant U.S. Attorneys); *United States v. Vance*, 256 F.2d 82, 83 (6th Cir. 1958) (per curiam) (even if indictment had to be signed by U.S. Attorney, signature by AUSA is a harmless error).

### E.     The validity of the Acting Attorney General's designation does not affect this court's jurisdiction.

This Court has jurisdiction over this case regardless of the lawfulness of the Acting Attorney General's appointment.  The Court has jurisdiction under 18 U.S.C. § 3231 over "all offenses against the laws of the United States" within the district.  The Acting Attorney General's allegedly invalid designation does not strip the Court of jurisdiction.  *See United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir. 1990) (where a Special Assistant U.S. Attorney's appointment was statutorily invalid, his "unauthorized appearance on behalf of the government did not deprive the district court of jurisdiction over the criminal proceedings"); *Home New Publishing Co. v. United*

*States*, 329 F.2d 191, 193 (5th Cir. 1964) (participation of statutorily unqualified government counsel did not deprive court of jurisdiction where the case was supervised by an Assistant United States Attorney).

### F. There is no basis to suspend or otherwise delay this prosecution.

Finally, the Court should reject any suggestion that this prosecution be put on hold until there is a Senate-confirmed Attorney General or Acting Attorney General. As explained above, the prosecution is currently supervised by a duly-appointed United States Attorney and by the Senate-confirmed Deputy Attorney General. Even if the defendant were ultimately correct that the Acting Attorney General's designation is invalid, the remedy would simply be for the Deputy Attorney General to assume that role or for the President to designate another Senate-confirmed officer. The defendant's constitutional challenge provides no reason to delay the administration of justice in this case.

Respectfully submitted,

GRETCHEN C.F. SHAPPERT
UNITED STATES ATTORNEY

Dated: November 27, 2018  BY:  /s/ Sigrid M. Tejo-Sprotte
Sigrid M. Tejo-Sprotte
Assistant United States Attorney
5500 Veteran's Drive, Suite 260
St. Thomas, Virgin Islands 00802
Telephone:(340)774-5757
Facsimile:(340) 776-3474
Sigrid.Tejo-Sprotte@usdoj.gov

# CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on November 27, 2018, I electronically filed the foregoing Government's Opposition to Defendant's Motions to Vacate with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties of record:

**Joseph A DiRuzzo , III**
DiRUZZO & COMPANY
401 East Las Olas Blvd. Suite 1400,
FT. LAUDERDALE, FL 33301
954-615-1676
Fax: 954-824-0340
Email: jd@diruzzolaw.com

                                         BY:    /s/ Sigrid M. Tejo-Sprotte
                                                        Sigrid M. Tejo-Sprotte
                                                        Assistant United States Attorney
                                                        5500 Veteran's Drive, Suite 260
                                                        St. Thomas, Virgin Islands 00802
                                                        Telephone:(340)774-5757
                                                        Facsimile:(340) 776-3474